IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

   v.                 23-CR-16

ISHAQ IKHARO,

   Defendant.

---

### THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Douglas A. C. Penrose, Assistant United States Attorney, of counsel, respectfully files this response in opposition to the defendant's Sentencing Memorandum, (Dkt. 56) and Supplemental Sentencing Memorandum (Dkt. 58), and in support of a sentence of that includes a substantial term of incarceration.

### PRELIMINARY STATEMENT

"I'm no predator." That's what the defendant told Minor Victim 1, a 12 year-old male with whom the defendant was communicating online. "Trust me to god I'm not a pedo," he said to Minor Victim 2, a 15 year-old male he was communicating with. To paraphrase Shakespeare, the defendant doth protest too much. Because shortly following these statements, the defendant tells Minor Victim 1 that he'll "do anything" for pictures of the victim's naked buttocks, and bribes him with promises of video game equipment in return for

videos of the victim "squeezing [his] [butt]cheeks with one hand." He tells Minor Victim 2 to "give him a good show" and to "take off your pants and lay on your stomach on the bed so I can see your cheeks fully and grind the bed a little." There is no question that the defendant preyed on these two minor victims and pressured them to produce sexually explicit images and videos of themselves for the defendant's pleasure. These are the actions of a predator. Of a person who is sexually attracted to children.

On February 28, 2023, the defendant pled guilty to a one count Information charging him with violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2) (possession of child pornography). As the plea agreement makes clear, although the defendant pled guilty to possession of child pornography, his offense conduct also constituted production of child pornography under Title 18, United States Code, Section 2251(a) and the defendant's guideline range in the plea agreement was calculated accordingly. The result was a total offense level of 37, including acceptance of responsibility. (Dkt. 29 at ¶ 20; *see also* PSR at ¶ 89 (calculating the same offense level).) This would equate to a guideline range of between 210 months and 262 months of incarceration, but because of the 10-year statutory maximum penalty for possession of child pornography, the guideline range is reduced to 120 months. (Dkt. 29 at ¶ 20; PSR at ¶ 89). Despite these ranges, the defendant now comes before the Court and asks for a sentence that does not include *any* term of incarceration. (Dkt. 56 at 1.) Although the government recognizes the defendant's medical condition and the challenges this poses, a sentence that does not include a term of incarceration would ignore the sentencing guidelines, is inconsistent with the Section 3553(a) factors, and is fundamentally unjust. Instead, the Court should impose a sentence that includes a substantial term of imprisonment, even if it is inclined to impose a below-guidelines sentence.

**STATEMENT OF FACTS**

The government concurs with and relies on the statement of facts outlined in the Presentence Investigation Report ("PSR") at paragraphs 22 through 40. (Dkt. 50.)

**DISCUSSION**

I. **In Considering the Section 3553(a) Factors, the Court Should Conclude That a Sentence That Includes a Substantial Term of Incarceration Provides the Proper Punishment for the Offense of Conviction.**

The government believes that a sentence that includes a substantial term of incarceration provides for a punishment that is sufficient but not greater than necessary in light of the defendant's conduct. The United States recognizes that since *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, "advisory" does not mean irrelevant. The Court is not "free to ignore the Guidelines, or to treat them merely as a 'body of casual advice.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*), *quoting United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). Yet this is what the defendant proposes. The defendant asks for a sentence of probation, *i.e.*, *10 years* less than the guideline range as calculated in the plea agreement. The guidelines should not be jettisoned so lightly.

After considering the Guidelines, the Court must then fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a). The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar

conduct." Id. The United States contends that a sentence that includes a substantial term of incarceration is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

 A. *The Nature and Circumstances of the Offense Warrant a Sentence That Includes Incarceration.*

 The defendant's conduct necessitates a prolonged period of incarceration. On two separate occasions, the defendant victimized a 12 year-old boy and a 15 year-old boy. The defendant's conduct was similar with respect to both victims: he engaged them in conversations online; he initiated and pursued sexualized conversations with them, in full knowledge of the fact that they were minors; and he persuaded them to produce sexually explicit images and videos of themselves.

 Between November 2018 and April 2019, the defendant communicated via Skype with Minor Victim 2, who was fifteen years old at the time. (Dkt. 29 at ¶ 7.d.) In these communications, the defendant compliments the minor victim, telling him that he has a "nice cock." (PSR at ¶ 42.) He repeatedly asks for videos of Minor Victim 2 naked and performing various sexual acts. (Id.) The result of the defendant's entreaties was that Minor Victim 2 sent the defendant images and videos of himself naked while masturbating. (PSR at ¶ 44.)

 Over a year after exploiting Minor Victim 2, the defendant engaged in similar conduct with Minor Victim 1. Once again, the defendant used an online platform—Instagram this time—to exploit a minor. As before, the defendant flattered his victim, commenting on how "thick" Minor Victim 1 was. (PSR at ¶ 23.) This time, however, the defendant also bribed his victim, promising to buy Minor Victim 1 a video game controller and microphone in return for sexually explicit pictures. (Id.) The defendant's entreaties were ultimately successful,

4

resulting in Minor Victim 1 sending the defendant several pictures and videos of him with his pants down, exposing his buttocks, as well as a video of his erect penis. (Id.) Minor Victim 1 believes that he sent the defendant between 20-30 pictures and videos of himself exposing his genitals. (Id. at ¶ 29.)

Taken together, the nature and circumstances of the defendant's conduct fully justifies a sentence that includes a substantial period of incarceration. He pursued sexually explicit conversations with two boys, who the defendant knew were minors. And he persuaded and cajoled them into producing child pornography. As the mother of Minor Victim 1 stated in her victim impact statement, the defendant "pretended to be a friend to [Minor Victim 1], gained his trust and then violated him repeatedly." (VIS at 1.) As a result, Minor Victim 1 (and Minor Victim 2) will have "to face the reality that there may forever be photos [and videos] of [Minor Victim 1] on the internet." (Id.) A sentence that does not include prolonged incarceration simply does not provide just punishment for the defendant's conduct.

B. *The History and Characteristics of the Defendant Do Not Justify a Sentence of Probation.*

There is nothing about the defendant's history and characteristics that justifies a non-incarceration sentence. There is no question that the injuries that the defendant suffered as a result of the crash he was in were devastating. He is paralyzed from the waist down and is confined to a wheelchair. (Dkt. 56 at 2.) As a result, tasks that for most people are routine are instead an ordeal, if not impossible. (*See generally*, Defendant's Supplemental Sentencing Memorandum at Ex. B.) At the same time, however, it is false to claim, as defense counsel does, that the "Defendant's disability prevents him from being a danger to society." (Dkt. 56 at 3.) The defendant's medical condition did not prevent him from engaging in the instant

5

conduct that forms the basis for his conviction. Instead, as the defendant's father notes, "[b]eing severely disabled . . . is not an excuse to not follow the laws of the land." (Dkt. 56 at 3.)

In addition, the Bureau of Prisons ("BOP") is perfectly capably of providing the defendant with the medical care that he needs. As part of his submission, the defendant submitted a letter from Dr. Pedro Cheung describing the defendant's condition and prognosis. (Dkt. 58 at Ex. A.) The government provided the BOP with a redacted version of Dr. Chung's letter. According to the BOP, it is able to care for inmates with conditions such as the defendant's and in fact currently have inmates in custody with similar needs. Thus, the defendant's disability does not preclude him from serving a term of incarceration. (The government would not oppose a request by the defendant that he be permitted to self-surrender so that he can coordinate his medical care with the BOP prior to beginning any term of incarceration.)

The defendant also submitted a psychological evaluation conducted by Dr. Jeremy Coles. (Dkt. 58 at Ex. C.) Dr. Cole diagnosed the defendant with Persistent Depressive Disorder. (Id. at 9.) The government does not disagree with this diagnosis, but notes that Dr. Cole does not draw a direct causal connection between this diagnosis and the offense conduct. Dr. Cole also concludes that the defendant is not afflicted with a Pedophilic Disorder. (Id.) Perhaps this is an accurate medical diagnosis. The government notes that in reaching this diagnosis, it is unclear how much weight Dr. Cole gave to the defendant's various self-serving statements, such as that the offense conduct was driven by simple "curiosity" or that the defendant did not feel that he was at any risk of repeating the offense conduct. (Id. at 7.) More fundamentally, however, regardless of the technical diagnosis, the defendant's actions appear

to show that the defendant *is* in fact sexually attracted to minors, even if he does not meet the definition of having a Pedophilic Disorder. In one of his chats with Minor Victim 2, the defendant is demanding that Minor Victim 2 send him sexually explicit videos and states "daddy needs some help being more horny, just one [more video]." (PSR at ¶ 42.) After receiving the demanded video from Minor Victim 2, the defendant then replies: "I would ride ur cock until u cum and thrust deep inside me." (Id.) With all due deference to the psychological evaluation and testing that Dr. Cole conducted, the defendant's own words (made when he did not have an incentive to minimize his sexual attraction to children) should be given substantial weight. And these words demonstrate a sexual attraction to minors.

Finally, it is worth noting that the defendant's conduct while on pretrial release is not unblemished. A non-compliance report was filed by Probation on May 19, 2023 as a result of the defendant refusing probation officers full access to his residence and thereby interfering with their ability to appropriately monitor him. (PSR at ¶ 19.) Although a violation report was never filed as a result of this conduct, and the defendant subsequently expressed remorse regarding his conduct at a status conference on May 24, 2023, it is nevertheless relevant for the Court's consideration. This is especially true where, as is the case here, the defendant is requesting a sentence of probation, which would presumably subject him to many of the same conditions that he seemed to struggle with while on pretrial release. To be clear, the government does not believe that a sentence of probation is appropriate regardless of the defendant's conduct while on pretrial release. However, it seems particularly inappropriate where the defendant has already shown difficulty complying with release conditions.

### C. A Sentence That Includes a Term of Incarceration Is Consistent with Sentences Received by Similarly Situated Defendants.

The sentence in this case should reflect "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Such an analysis leads to the conclusion that the defendant should receive a sentence that includes a substantial term of incarceration, even taking into account the defendant's medical condition. This is true based on sentences received by similarly-situated defendants in this district and more generally.

At a general level, similarly-situated offenders who produce child pornography do not receive probationary sentences. The United States Sentencing Commission publishes an Interactive Data Analyzer that looks at the sentences offenders receive throughout the country based on various criteria. *See* United States Sentencing Commission, "Interactive Data Analyzer," *available at* https://ida.ussc.gov/analytics/saw.dll?Dashboard (last accessed Oct. 19, 2023). Looking at federal offenders sentenced in the Western District of New York between fiscal years 2015 and 2022 under Sentencing Guideline 2G2.1, which encompasses the production of child pornography, and limiting the results to only those defendants who have a Criminal History category of I, the results are stark: offenders receive an average sentence of 218 months with nearly 85% of offenders receiving a sentence of 120 months or more. *See* Id. Performing the same analysis on a national level results in an average sentence of 267 months with over 92% of offenders receiving a sentence of 120 months or more. Again, the defendant's medical condition may justify a lower than average sentence. But it does not justify a non-jail sentence.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a sentence that includes a substantial term of incarceration.

DATED: Buffalo, New York, October 19, 2023.

                                    TRINI E. ROSS
                                    United States Attorney

              BY:    s/DOUGLAS A. C. PENROSE
                        Assistant United States Attorney
                        United States Attorney's Office
                        Western District of New York
                        138 Delaware Avenue
                        Buffalo, New York 14202
                        716-843-5868
                        Douglas.Penrose@usdoj.gov